1                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF KENTUCKY
2                       LOUISVILLE DIVISION

3
UNITED STATES OF AMERICA,       )    Case No. 3:21-CR-00018
4                               )
          Plaintiff,            )
5                               )
v.                              )
6                               )
CURTIS BRADLEY                  )
7                               )    May 24, 2021
          Defendant.           )    Louisville, Kentucky
8

9                           * * * * *
               TRANSCRIPT OF CHANGE OF PLEA HEARING
10             BEFORE HONORABLE BENJAMIN J. BEATON
                  UNITED STATES DISTRICT JUDGE
11                          * * * * *

12   APPEARANCES:

13   For United States:       Stephanie M. Zimdahl
                              U.S. Attorney's Office
14                            717 West Broadway
                              Louisville, KY  40202
15
     For Defendant:           Armand I. Judah
16                            Tilford Dobbins & Schmidt PLLC
                              401 W Main St
17                            Suite 1400
                              Louisville, KY  40202
18
     [Defendant present.]
19

20
                         Rebecca S. Boyd, RMR, CRR
21                        Official Court Reporter
                          232 U.S. Courthouse
22                        Louisville, KY 40202
                             (502) 625-3777
23
     Proceedings recorded by mechanical stenography, transcript
24   produced by computer.

25

1          (Begin proceedings in open court 2:06 p.m.)

2          THE COURT:  All right.  On the record today in the

3    case of United States against Curtis Bradley, Criminal Action

4    3:21-18.  Could counsel please state your appearances for the

5    record?

6          MS. ZIMDAHL:  Good afternoon, Your Honor.  Stephanie

7    Zimdahl on behalf of the United States.

8          MR. JUDAH:  Judge, Armand Judah.  I'm here on behalf

9    of the defendant, Curtis Bradley, who's here to my right.

10          THE COURT:  Mr. Bradley, how are you?

11          THE DEFENDANT:  Fine.  Thank you.

12          THE COURT:  You-all are free to remain seated to take

13    advantage of our helpful Plexiglass, whatever work it's still

14    doing for us, but I understand old habits die hard, so if you

15    stand up, I'm not going to deduct any credit.

16      Mr. Judah, my understanding is that Mr. Bradley wishes to

17    enter a guilty plea here today on Counts 1, 2, 3, and 4 of the

18    indictment; is that correct?

19          MR. JUDAH:  Yes, Your Honor.

20          THE COURT:  And this -- and that this is an open plea?

21          MR. JUDAH:  Yes, sir.

22          THE COURT:  Have you had plenty of time to explain his

23    rights to him in advance of today's hearing?

24          MR. JUDAH:  I have, Your Honor.

25          THE COURT:  Okay.  And, Mr. Bradley, are you rep --

1  represented by counsel here today?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  And who is that?

4          THE DEFENDANT:  Mr. Judah to my left, sir.

5          THE COURT:  Okay.  And do you agree that you've had

6  enough time to discuss with Mr. Judah your rights about this --

7  leading up to this hearing today?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Okay.  And is he correct that it's your

10  intention to plead guilty to Counts 1, 2, 3, and 4 of the

11  indictment?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Okay.  Ms. Zimdahl, does the -- this crime

14  does have an identifiable victim, does it not?

15          MS. ZIMDAHL:  Yes, Your Honor, it does.

16          THE COURT:  Okay.  And has the United States been in

17  touch with the victim or their representatives, and have you

18  discussed any right to attend or be reasonably heard?

19          MS. ZIMDAHL:  Yes, Your Honor.  We have been in touch

20  with the guardian for the victim repeatedly as recently as last

21  week in regards to this change of plea hearing for today,

22  discussed their right to be heard.  They are aware of the

23  hearing, have chosen not to appear today but await to appear

24  before this Court at the time of the sentencing.

25          THE COURT:  Okay.  They do plan to attend at the time

1  of sentencing or someone does?

2      MS. ZIMDAHL:  Yes, Your Honor.

3      THE COURT:  Okay.  And you can say Judge instead of

4  Your Honor.  It's kind of snooty, isn't it?  Judge is fine.

5      Okay.  Well, I appreciate your diligence and -- and

6  communications with the victim's side of things.

7      Mr. Judah, I know we have this pending motion for the

8  evaluation.

9      MR. JUDAH:  Yes, sir.

10      THE COURT:  Now, that's, technically, an ex parte

11  motion?

12      MR. JUDAH:  It is, Your Honor, that we can address --

13  well, however the Court would like to proceed, but we can

14  certainly address that after we finish with the guilty plea,

15  Your Honor.

16      THE COURT:  Okay.  And are you comfortable with us --

17  would you prefer to discuss it outside the presence of the

18  Government?

19      MR. JUDAH:  They -- they know about it.  They -- they

20  don't really have a stand on it, Your Honor.  They're not

21  participating.  I did it only because of the nature of the way

22  the case partic -- precipitated and went.  I gave them the

23  courtesy of letting them know that, but -- but they don't have,

24  really, a dog in the fight.

25      THE COURT:  Okay.  Well, I'm certainly fine taking it

1    up after the guilty plea.  I defer to you, I suppose, on whether

2    you prefer to discuss it on an ex parte basis or -- or not.

3            MR. JUDAH:  Yes, sir.

4            THE COURT:  I'll tell you, just in the interest of

5    candor, that I do have some questions about whether that order

6    is appropriate in this case, and so just in the interest of

7    disclosure, before we go ahead with the plea portion of the

8    proceeding today, I wanted to make you aware of that so no one

9    was surprised if, at the end, we took a different direction.

10            MR. JUDAH:  What I think, Your Honor, procedurally,

11    probably the best way to handle it today is to go ahead and

12    resolve the guilty plea, and then once we're done with that, the

13    Government may be excused, and we can talk about it ex parte.

14            THE COURT:  Okay.

15            MR. JUDAH:  And we can maintain a record, but it will

16    be -- that way, it will be between us.  The Government won't be

17    involved in any way.

18            THE COURT:  Okay.

19            MR. JUDAH:  And I know they don't want anything that

20    might come up at some point somewhere in the future that could

21    make a question of that, so I think that's probably the better

22    way to handle it, Your Honor.

23            THE COURT:  Okay.  Well, that's certainly fine with

24    me.  Ms. Zimdahl, is that fine from the Government's

25    perspective?

1    MS. ZIMDAHL:  That will be just fine.

2    THE COURT:  Okay.  And, Mr. Bradley, do you know,

3    generally, what we're referring to here?  Discussion about

4    whether an evaluation will take place and --

5    THE DEFENDANT:  Yes, sir.

6    THE COURT:  Okay.  And the question is whether we're

7    comfortable going ahead with the guilty plea before resolving

8    whether or not that occurs.  Does that make sense?

9    THE DEFENDANT:  Absolutely.

10    THE COURT:  Okay.  And are you comfortable going ahead

11    with the plea, at this point?

12    THE DEFENDANT:  Yes, sir.

13    THE COURT:  Okay.  All right.  Thanks, everyone.

14    Okay.  Anything else preliminary that we ought to take up before

15    we get started?

16    MS. ZIMDAHL:  Nothing from the Government.

17    MR. JUDAH:  No, Your Honor.

18    THE COURT:  Okay.  Thanks.  Mr. Bradley, before

19    accepting a guilty plea, the Court has to make four

20    determinations.  One, that you're competent to plead guilty;

21    two, that you're making the plea freely and voluntarily; three,

22    that you understand the charges against you, and the penalties

23    that those charges carry, and that, four, there is a factual

24    basis for the plea.

25    So to make those determinations, I'll have to ask a number

1   of questions.  Some will be personal.  Some will concern the

2   rights that a defendant must give up in order to plead guilty.

3   Some will concern the conduct at issue in the indictment.

4       Now, if you don't understand something that I'm saying or

5   something that we're discussing, at any point, please tell me or

6   tell Mr. Judah.  We'll be happy to pause, to restate what we're

7   discussing.  That's perfectly all right for you to get our

8   attention.  We want to make sure you understand what's going on

9   today.

10      If you don't understand -- I am sorry.  If you don't say

11  anything, I'm going to assume that you do understand what's

12  going on; is that fair?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Okay.  Thank you.  Okay.  The first right

15  we'll address today is the right to remain silent.  Mr. Bradley,

16  do you understand that you have a constitutional right to remain

17  silent and not incriminate yourself?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Okay.  And you understand, as I just

20  mentioned, that I will ask you some questions about what you did

21  in order to satisfy myself that you are guilty as charged, and

22  you will have to acknowledge your guilt.  Are you choosing to

23  waive your right to remain silent in order to answer these

24  questions?

25          THE DEFENDANT:  Yes, I am, sir.

1        THE COURT:  Okay.  Becky, would you please administer

2   the oath to Mr. Bradley?

3      (CURTIS LEE BRADLEY sworn.)

4        THE COURT:  All right.  Thank you both.  All right.

5   Mr. Bradley -- sorry.  Letting Becky catch up.  I keep her on

6   her toes.

7      Mr. Bradley, you've now sworn an oath to answer these

8   questions honestly.  Do you understand that any answers to the

9   Court's questions that are not truthful could be subject to the

10  penalties of perjury or making a false statement?

11       THE DEFENDANT:  Yes, I do.

12       THE COURT:  Okay.  Okay.  Mr. Bradley, what's your

13  full name?

14       THE DEFENDANT:  Curtis Lee Bradley.

15       THE COURT:  Okay.  Where were you born?

16       THE DEFENDANT:  Elizabethtown, Kentucky.

17       THE COURT:  Okay.  And where did you live before you

18  were arrested?

19       THE DEFENDANT:  Here in Louisville, 3407 Deibel Way or

20  something like that.  30 -- yeah, I think that's correct.

21       THE COURT:  Okay.

22       THE DEFENDANT:  It's been a year and a half so --

23       THE COURT:  Understood.  About how old are you?

24       THE DEFENDANT:  I'm 62.

25       THE COURT:  Okay.  Do you feel like you generally

1    understand what's going on here in the courtroom today?

2            THE DEFENDANT:  Yes, sir; I do.

3            THE COURT:  Okay.  How far did you go in school?

4            THE DEFENDANT:  Three years of college.

5            THE COURT:  Okay.  Where did you go to college?

6            THE DEFENDANT:  University of Louisville.

7    Bellarmine -- I started out at Bellarmine, then I switched over

8    to University of Louisville.

9            THE COURT:  Okay.  And what sort of work did you do

10   after college and before you were arrested?

11           THE DEFENDANT:  After college, I had gotten a job with

12   the IRS.  Skip all the way up to now.  And now -- or recently, I

13   was working for myself working on computers.

14           THE COURT:  Okay.  And what sort of computer work?

15           THE DEFENDANT:  As a technologist.

16           THE COURT:  Okay.  Repair and so forth?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Okay.

19           THE DEFENDANT:  Absolutely.

20           THE COURT:  All right.  Are you under the influence of

21   alcohol or drugs today?

22           THE DEFENDANT:  No, sir.

23           THE COURT:  Okay.  Do you or have you ever had a

24   problem with drugs or alcohol?

25           THE DEFENDANT:  No, sir.

1       THE COURT:  Okay.  Ever treated for addiction of any

2  sort?

3       THE DEFENDANT:  No, sir.

4       THE COURT:  Okay.  What about prescription

5  medications?  Are you taking anything today that you aren't

6  normally or are you not taking something that you normally do in

7  a way that could affect how you think and speak?

8       THE DEFENDANT:  No, sir; I am not.

9       THE COURT:  Okay.  Have you ever been diagnosed with

10  any mental illness or disorder?

11       THE DEFENDANT:  No, sir.

12       THE COURT:  Okay.  Ever treated or hospitalized for

13  any issue regarding your mental health?

14       THE DEFENDANT:  I didn't hear the last word.

15       THE COURT:  Regarding your mental health?

16       THE DEFENDANT:  Oh.  No, sir.

17       THE COURT:  Okay.  Mr. Judah, have you and Mr. Bradley

18  had any problems communicating?

19       MR. JUDAH:  No, Your Honor.

20       THE COURT:  Today or any other point in time?

21       MR. JUDAH:  Par -- I'm sorry, Your Honor?

22       THE COURT:  Today or at any other point in time?

23       MR. JUDAH:  No, sir.  Not at all.

24       THE COURT:  Okay.  To the best of your knowledge, has

25  Mr. Bradley understood your legal advice and assisted in the

1  preparation of his defense?

2         MR. JUDAH:  Yes, sir.

3         THE COURT:  Okay.  Do you have any doubt about his

4  understanding of the charges or his competence to plead guilty

5  at this time?

6         MR. JUDAH:  No, sir.

7         THE COURT:  Okay.  Based on the defendant's answers

8  and the representations of counsel, the Court finds the

9  defendant is competent to plead guilty to the charges against

10  him in the indictment.

11     All right.  Mr. Bradley, next we're going to talk about

12  those rights that I mentioned earlier.  We already discussed

13  your right to remain silent, and we need to, next, ensure that

14  you understand other rights that you are giving up or waiving by

15  pleading guilty here today.

16     Do you understand that you do not have to plead guilty to

17  these charges, you have a right to plead not guilty, that no one

18  can make you plead guilty, not me, not your lawyer, not the

19  United States Attorney?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  Okay.  Do you understand that you have a

22  right to a speedy and public trial by jury, and that if you

23  enter a plea of guilty, you will not have a trial in this case?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Okay.  Do you understand that at a trial,

1    you would be represented by an attorney, and that if you

2    couldn't afford one, one would be appointed for you?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you understand that you are presumed to

5    be innocent, and that at a trial, the United States would have

6    the burden of proving you guilty beyond a reasonable doubt

7    before you could be convicted?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  In order to prove you guilty beyond a

10   reasonable doubt, the United States would have to present

11   evidence against you, and you, with the assistance of your

12   lawyer, could challenge that evidence and cross-examine any

13   witnesses.  Do you understand that?

14             THE DEFENDANT:  Yes, I do.

15             THE COURT:  Okay.  Do you also understand that you

16   could subpoena witnesses and get them here to testify you -- for

17   you in order to help you present your side of the case to the

18   jury?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Do you realize that you could testify,

21   though you wouldn't have to, and that no one can force you to

22   testify at a trial, but that if you chose not to, the jury would

23   be told that they couldn't hold that against you?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And, finally, do you realize that by

1  pleading guilty, you are waiving all those rights?

2  THE DEFENDANT:  Yes, I do.

3  THE COURT:  Okay.  Mr. Judah, has your client

4  previously been convicted of a felony?

5  MR. JUDAH:  I believe he was, Your Honor, years ago.

6  I think, what was it, 2000 --

7  THE DEFENDANT:  '93.

8  MR. JUDAH:  No.  1993?  1993, Your Honor.

9  THE COURT:  Okay.  At any time since then, Mr.

10  Bradley, were your civil rights restored after that felony

11  conviction?

12  THE DEFENDANT:  No, sir.

13  THE COURT:  Okay.  So this may not apply to you, but

14  do you understand that pleading guilty to a felony offense, if

15  it's your first one, may deprive you of valuable civil rights

16  such as the right to vote, the right to hold public office, the

17  right to serve on a jury, and the right to possess a firearm?

18  THE DEFENDANT:  Yes, sir.

19  THE COURT:  Okay.  Now, this next part doesn't apply

20  to you, because you were born in the United States, but I'm

21  still required to inform you that if you are not a citizen or if

22  you are a naturalized citizen, in addition to other potential

23  penalties, a guilty plea could also subject you to deportation,

24  detention, exclusion, voluntary -- or voluntary departure if you

25  plead guilty while not -- not being a citizen.  Do you

1  understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay.  Ms. Zimdahl, the offenses at issue

4  here would qualify as sex offenses under the US Code, would they

5  not?

6          MS. ZIMDAHL:  Yes, they do.

7          THE COURT:  Okay.  And, Mr. Judah, have you had a

8  chance to speak with your client about the restrictions that

9  conviction for a sexual offense could carry with respect to

10 where he can live and work, with whom he can be around,

11 registration and so forth?

12         MR. JUDAH:  Judge, we've generally discussed it.  I

13 think, just for the record to be clear, he understands that with

14 this, he would be placed, potentially, on a federal sex registry

15 where he would be limited -- at some point, if he were released

16 from incarceration, would be limited in where he could live, and

17 who he could associate with, potentially, and be subject to --

18 in this case, he could be subject to supervision for probably

19 the rest of his life, potentially.

20         THE COURT:  Okay.  Mr. Bradley, do you understand

21 generally what we're discussing here?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Okay.  Ms. Zimdahl, anything else that

24 you'd like to -- you think we ought to add by way of advising

25 him on this point?

1          MS. ZIMDAHL:  Your Honor, the only thing that I would

2    add is given the nature of this case, that the Court nor the

3    United States can really advise with certainty on what those

4    limitations or restriction may be, at this point, in the future.

5          THE COURT:  Correct.  We don't know, in other words,

6    today what that could be.  It would be a determination down the

7    line, but there certainly is a chance that these restrictions

8    could be in place, potentially, for the rest of your life.

9          MR. JUDAH:  He understands that, Your Honor.

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  Okay.  Mr. Bradley, have you

12    received a copy of the indictment?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And did you have a sufficient chance to

15    review it and discuss it with Mr. Judah?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Are you satisfied with the advice and

18    representation that Mr. Judah has given you with regards to this

19    indictment?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Okay.  Now I'm going to ask the United

22    States to briefly describe the nature of the charges, the

23    potential penalties which may apply, including maximum or

24    mindi -- maximum or mandatory minimum sentences, supervised

25    release, and whether forfeiture and restitution are at issue in

1    this case.

2              MS. ZIMDAHL:  Thank you, Judge.  Counts 1 through 3 of

3    this indictment are charges of production of child pornography.

4    Each of those counts carry a minimum penalty of 15 years'

5    imprisonment, no more than 30 years' imprisonment, a $250,000

6    fine, and a supervised release term of no less than five years,

7    and no more than a life term of supervised release.

8         Were the defendant to have a qualifying prior conviction,

9    the term of imprisonment on each count is no less than 25 years,

10   no more than 50 years, and the same fine and term of supervised

11   release applies.

12        Count 4 charges possession of child pornography.  That

13   carries a maximum sentence of 10 years' imprisonment, there is

14   no mandatory minimum, a $250,000 fine, and the same supervised

15   release range of five to life.

16        With a qualifying prior conviction, that would be a term of

17   imprisonment of no less than 10 years, and no more than 20

18   years, and, again, the same fine and supervised release term

19   follows.

20        Just to give the total range there, Judge, it's a 15-year

21   minimum on all four of those and up to a 100-year maximum term

22   of imprisonment, a $250,000 fine, and five years to life term of

23   supervised release to follow.

24        With a qualifying prior conviction, that does change to a

25   35-year minimum up to a 170-year maximum term of imprisonment, a

1   $250,000 fine, and five years to life term of supervised
2   release.
3       There is a special assessment required of $100 per count
4   plus a $5,000 mandatory assessment per count if the defendant is
5   found to be nonindi -- indigent, and that's pursuant to 18
6   United States Code section 3014.
7       There is forfeiture in this indictment, and that relates to
8   the electronic devices that were seized in the course of this
9   case.  And then, finally, there is restitution at issue, as we
10  do have an identifiable victim.  At this point, no costs
11  appropriate and suitable for restitution have been identified,
12  but that remains to be adjudicated at sentencing.
13          THE COURT:  All right.  Thank you.  Mr. Judah, is she
14  right that forfeiture, I believe, involves a camera and a phone?
15          MR. JUDAH:  Judge, my -- yeah.  My client's -- we
16  didn't go every item, but he is well aware that there is a
17  forfeiture clause, and that he's -- he and I discussed, and he
18  is aware that the items that were seized as part of this are --
19  he's not getting them back, to put it bluntly, Judge.
20          THE COURT:  Okay.
21          MR. JUDAH:  And there's quite -- there were several
22  cameras.  There may have been a couple phones.  There was also
23  video equipment, so he's aware that that is part of the
24  indictment and part of the forfeiture, Your Honor.
25          THE COURT:  Is that right, Mr. Bradley?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Okay.  And the restitution in this case,

3    Ms. Zimdahl, is it mandatory under the pornography provision?

4          MS. ZIMDAHL:  Yes, Your Honor; it is.

5          THE COURT:  Okay.  Mr. Judah, when you -- well, one

6    question first.  You mentioned the effect of a qualifying prior

7    conviction.  Is that something that the United States

8    anticipates applying here?

9          MS. ZIMDAHL:  Your Honor, we do not.  We are not

10   aware, at this time, of any qualifying prior conviction.

11   However, I do want to mention it.  Sometimes those arise, and

12   neither party is aware, be -- but neither myself or defense

13   counsel are aware of such a conviction at this time.

14         THE COURT:  Is that fair?

15         MR. JUDAH:  That's correct, Your Honor.  I discussed

16   it at length with my client.  He assure -- he assures me that

17   there is nothing in his past that would -- concerning that in

18   any way for the Court.

19         THE COURT:  Okay.  And, Mr. Judah, do you otherwise

20   agree that the prosecutor has accurately described the charges

21   and poten -- potential penalties here?

22         MR. JUDAH:  Yes, sir.

23         THE COURT:  Okay.  Mr. Bradley, do you understand the

24   charges and the penalties that the United States described?

25         THE DEFENDANT:  Yes, sir; I do.

1          THE COURT:  Okay.  And as she explained, under the

2     offenses charged, the Court could sentence you to a minimum

3     of -- of 15 years without the qualifying prior conviction and up

4     to 100 or 170 years if there is a qualifying prior conviction.

5     Did I get that down right?  Correct?

6          MS. ZIMDAHL:  That's correct, Your Honor, other than

7     if there is a prior qualifying conviction, the mandatory minimum

8     would become 35 years.

9          THE COURT:  Right.  And the $250,000 fine, depending

10    on the ability to pay, and supervised release term of five years

11    to life.  Does that make sense to you, Mr. Bradley?

12          THE DEFENDANT:  Yes, sir; it does.

13          THE COURT:  Okay.  Have you had a chance to discuss

14    with Mr. Judah what supervised release means after a period of

15    incarceration?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  And do you understand that if you

18    are out on supervised release and violated rules or conditions,

19    that you could face additional imprisonment?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  Okay.  I take it, based on the date of the

22    prior conviction you mentioned, you are not presently on

23    probation or parole from a conviction in any court, are you?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Okay.  Mr. Judah, are you satisfied that

1    Mr. Bradley understands the nature of the charges, the potential

2    penalties, and what a term of supervised release -- what term of

3    supervised release could be required of him?

4                 MR. JUDAH:  Yes, sir.

5                 THE COURT:  Okay.  Based on the defendant's responses

6    and those of counsel, the Court finds that the defendant has had

7    an appropriate opportunity to review the charges against him in

8    the indictment with counsel and understands the charges and

9    potential penalties.

10       Okay.  Ms. Zimdahl, am I right that there is no written plea

11   agreement in this case?

12                MS. ZIMDAHL:  That's correct.

13                THE COURT:  Okay.  Has the Government made any formal

14   plea offers, communicated -- communicated any such offers to Mr.

15   Judah?

16                MS. ZIMDAHL:  We have made no formal offers in this

17   case.

18                THE COURT:  Okay.  And does that track with your

19   understanding, Mr. Judah?

20                MR. JUDAH:  Yes, sir.

21                THE COURT:  Okay.  So, Mr. Bradley, are you -- you do

22   understand that you are pleading guilty without any agreement

23   with the United States about what happens next?

24                THE DEFENDANT:  Yes, sir.

25                THE COURT:  Okay.  That means the United States is

1    free to argue for any sentence that they contend is appropriate

2    under the law.  Do you understand that?

3            THE DEFENDANT:  Yes, I do.

4            THE COURT:  Okay.  Now, your lawyer will still be free

5    to argue on your behalf, but it's important that you understand

6    that if you receive a sentence that is more severe than what you

7    would expect, you would still be bound by this guilty plea.

8            THE DEFENDANT:  Yes, sir; I do.

9            THE COURT:  Okay.  And the prosecutor, as echoed by

10   your lawyer, described what we believe to be the mini -- minimum

11   and maximum sentences here, mandatory minimum and maximum

12   sentences.  There may also be a guidelines calculation and

13   guidelines range that apply to your case, but we won't

14   understand exactly what those amounts are until the time of

15   sentencing.  Does that make sense to you?

16           THE DEFENDANT:  Yes, it does.

17           THE COURT:  Okay.  And even if you're surprised

18   unpleasantly by how that all shakes out, you understand you

19   can't withdraw the guilty plea, correct?

20           THE DEFENDANT:  I understand.  Mr. Judah explained

21   everything very well.

22           THE COURT:  Okay.  Thank you.  And, Mr. Judah, do you

23   agree that your client understands generally how this process

24   works?

25               MR. JUDAH:  I do, Your Honor, and -- I do.  We -- just

1  so the Court knows, and for the Court's benefit, we -- we not

2  only talked about what the United States has already expressed,

3  but we went over the guidelines and the potential guideline

4  ranges based upon what I believe the calculations could show,

5  and what would -- potentially what probation may come back with

6  when they do a guideline calculation, Your Honor.  So he and I

7  have talked about that in length and what we could expect, Your

8  Honor.

9         THE COURT:  Okay.  Good.  All right.  Now, Mr. Judah,

10  does this plea, in your view, have any bearing on Mr. Bradley's

11  appeal rights?

12         MR. JUDAH:  I'm sorry, Your Honor?

13         THE COURT:  Does a plea in this context have any

14  bearing at all on Mr. Bradley's appeal rights?

15         MR. JUDAH:  I don't think so, Your Honor, if I

16  understand your question.  I don't --

17         THE COURT:  I mean --

18         MR. JUDAH:  I'm not sure I'm following what your

19  saying, Your Honor.  I apologize.

20         THE COURT:  If there were a plea agreement, it would,

21  oftentimes --

22         MR. JUDAH:  Oh.

23         THE COURT:  -- contain a waiver of his right to

24  appeal.  I suppose, at this point, he's not surrendering any

25  rights with respect to his ability to appeal a sentence or --

1          MR. JUDAH:  No, Your Honor.

2          THE COURT:  -- a conviction?

3          MR. JUDAH:  The only waiver here is what the Court's

4   already gone through with him as part of the plea -- as part of

5   entering a plea for anyone at this stage, Your Honor, which is

6   he gives up his right to a direct appeal, potentially, but,

7   certainly, he has the right -- at some point, if he felt I was

8   ineffective, that's never waived, Your Honor.

9      But other than that, he doesn't -- he and I have talked

10  about it, and he's -- he understands he's giving up all of his

11  rights with the exception of potentially ineffective assistance

12  of counsel, if he were to feel that that was appropriate at some

13  point down the road, Your Honor.

14         THE COURT:  I guess I took it that because there was

15  no agreement in place, that he would have the ability to appeal.

16  Perhaps it's more likely an aspect of a sentence as opposed to

17  the -- to the guilty plea, but, Ms. Zimdahl, I don't believe

18  he's surrendering any rights, at least today, with respect to an

19  appeal; is that correct?

20         MS. ZIMDAHL:  I believe that's correct.  I don't

21  believe there is any waiver of appellate right at this point.  I

22  do think he's waived rights with respect to his trial throughout

23  our colloquy here today, but he will not have waived any

24  appellate rights, especially as it -- as it pertains to the

25  ultimate sentence in this case.

1    THE COURT:  Okay.  That's my understanding as well.

2    MR. JUDAH:  Yes, sir.

3    THE COURT:  All right.  Is there any need for us to go

4  on the sealed record for any reason today?

5    MS. ZIMDAHL:  No, Your Honor.

6    THE COURT:  Do you agree?

7    MR. JUDAH:  I agree.

8    THE COURT:  Okay.  All right.  Mr. Bradley, next,

9  we'll ensure that your plea is voluntary.  Has anyone threatened

10  you or threatened anyone close to you or forced you in any way

11  to plead guilty?

12    THE DEFENDANT:  No, sir.

13    THE COURT:  Okay.  Is that your free choice to plead

14  guilty today?

15    THE DEFENDANT:  Yes, it is, sir.

16    THE COURT:  Okay.  Have any promises been made to you

17  to cause you to enter a plea agreement -- a guilty plea today?

18    THE DEFENDANT:  I'm sorry.  I'm not certain what you

19  were saying.

20    THE COURT:  Let me give that quick -- question another

21  shot.

22    THE DEFENDANT:  Okay.

23    THE COURT:  Have any promises been made to you meant

24  to cause you to enter a guilty plea today?

25    THE DEFENDANT:  No, sir.

1    THE COURT:  Okay.  Based on the defendant's and

2  counsel's representations to my questions today, I find that the

3  defendant understands that the plea he is entering into is

4  voluntary.

5    Okay.  We mentioned the sentencing guidelines a moment ago,

6  Mr. Bradley.  Those guidelines are not binding on the Court, but

7  they are still considered an important starting point for

8  consideration of the sentence in any case.  So I want to make

9  sure you understand that they have two principal components.

10    The first is the offense level for the crimes that are

11  charged, and second is the criminal history.  Those two factors

12  will normally determine what's called the guidelines range,

13  which the Court will consider in sentencing you.

14    We learn about those factors and the guidelines range from

15  the presentence investigative report prepared by the probation

16  officer who will be assigned to your case.  Do you understand

17  that until that process takes place, it will be impossible to

18  know exactly what the guidelines range will be?

19    THE DEFENDANT:  Yes.  I understand, sir.

20    THE COURT:  Okay.  And, of course, the Court will also

21  consider any maximum or minimum sentences set by Congress and

22  federal law that apply to your case as well as any potential

23  motions for a departure or variance from the guidelines made by

24  counsel.

25    THE DEFENDANT:  Yes.

1        THE COURT: And in addition to those guidelines, the

2 Court will also consider the sentencing factors that Congress

3 set out in federal law under 18 USC 3553(a). Those include the

4 nature and char -- and circumstances of the offense, and the

5 history and characteristics of the person, the need for the

6 sentence imposed to reflect the seriousness of the offense, to

7 promote respect for the law, to provide just punishment for the

8 offense, to afford adequate deterrence to protect the public

9 from further crimes, and to provide the defendant with needed

10 educational or vocational training, medical care or other

11 corrective treatment.

12    Have you had a chance to talk to Mr. Judah about these

13 factors which the Court may consider in determining your

14 sentence?

15        THE DEFENDANT: Yes, I have, sir.

16        THE COURT: Okay. And do you understand that the

17 Court will conduct a sentencing hearing after we receive the

18 presentence investigative report?

19        THE DEFENDANT: Yes, sir; I do.

20        THE COURT: Okay. And you and your lawyer will have a

21 chance to review that report, challenge any facts or

22 conclusions, as will the Government, and then we will consider

23 objections and any motions to move away from the probation

24 office's calculation or recommendation at the sentencing

25 hearing. Does that make sense to you?

1          THE DEFENDANT:  Yes, it does, sir.

2          THE COURT:  Okay.  And do you understand that parole

3    has been abolished in the federal system, so that if you are

4    sentenced to a term of imprisonment, you wouldn't be released

5    early on parole?

6          THE DEFENDANT:  Yes, I understand.

7          THE COURT:  Okay.  Mr. Judah, are you satisfied that

8    your client understands the role of the sentencing commission,

9    the guidelines, and Congressional statutes in determining your

10   client's sentence?

11         MR. JUDAH:  I do, and I believe he does, Your Honor.

12         THE COURT:  Okay.  Thank you.  Mr. Bradley, now that

13   we've walked through with you all the rights you must give up in

14   order to plead guilty, the potential penalties for the counts

15   you are pleading guilty to, and walking through the factors

16   which will be considering -- considered at sentencing, do you

17   still wish to proceed with your guilty plea?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Okay.  I'd now like to ask the prosecutor

20   to summarize what evidence the United States would produce at

21   trial on each of the charges against the defendant.

22         MS. ZIMDAHL:  Yes, Judge, and I'll ask that the Court

23   bear with me.  It's a little bit lengthy just given the nature

24   and the number of counts here, and I have provided this in

25   writing to defense counsel and the defendant ahead of time, so

1   this is not the first time that this has been heard before.

2       If this case were to proceed to trial, the United States

3   would prove that over the course of several years, the defendant

4   in this case, Curtis Bradley, sexually assaulted the minor

5   victim on this case on many occasions.

6       This began when the minor victim, who I'll refer to as Jane

7   Doe, was approximately eleven years old, and it continued for

8   more than one hundred occasions until she reported those sexual

9   assaults approximately three years later in 2019.

10      The defendant had access to Jane Doe due to a familial

11  relationship.  Jane Doe's aunt, who was then married to the

12  defendant, which would transport Jane Doe to the defendant's

13  residence for the purpose of his engaging in sexual contact with

14  Jane Doe in return for the defendant providing the aunt with

15  cash or drugs.

16      After Jane Doe reported these ongoing sexual assaults to

17  authorities in July of 2019, a search warrant was executed at

18  the defendant's residence which resulted in a collection of

19  numerous digital devices.  Among these digital devices, law

20  enforcement officers discovered a black WiFi video camera.  This

21  was specifically a Maginon IPC-30 FHD video camera.  This was

22  located in the defendant's bedroom.

23      At the time that it was found, that camera was located on

24  top of the nightstand next to the defendant's bed.  LMPD

25  detectives then reviewed that camera and then discovered that it

1  contained video clips of sexually-explicit conduct involving the

2  defendant and Jane Doe.

3      The Government would further prove that in August of 2020,

4  the United States obtained a federal search warrant and searched

5  and forensically examined the Maginon camera and the min NSD

6  card that had been contained within it along with several other

7  SD cards and thumb drives found in the defendant's bedroom.

8      On August 17th of 2020, federal law enforcement officials

9  executed the warrant and reviewed that min SD card from the

10 Maginon video camera.  Agents with the Homeland Security

11 Investigation Agency discovered that that SD card contained

12 numerous video clips of the defendant's bedroom, including many

13 video clips that contained sexually-explicit conduct involving

14 the defendant and Jane Doe dated from the time period of July

15 through November of 2018.  Among those clips were also video

16 clips of the defendant manipulating and moving that video camera

17 around his bedroom.

18     Specific to Count 1 of the indictment, which charges the

19 defendant with the production of child pornography on or about

20 July 24th of 2018, the Government would prove that on or about

21 that date, the defendant intentionally recorded a video on the

22 Maginon camera that captured him engaging in sexually-explicit

23 with Jane Doe -- sex -- excuse me.  Sexually-explicit conduct

24 with Jane Doe, who was then a minor child under the age of 16.

25     A specific video clip from that date is approximately 59

seconds long.  The clip shows Jane Doe naked lying face down on a bed with her buttocks and genitals in the air while the defendant, who was also naked, is close behind her.  In this video clip, the defendant can be seen to use a cell phone to take either photo -- photos or videos of Jane Doe with a focus on her buttocks and genital area from behind.  At the end of the video clip, the defendant begins to sexually penetrate Jane Doe.

Specific to Count 2, the Government would prove that on or about the date of August 6, 2018, the defendant intentionally recorded a video clip on the Maginon camera that captured him engaged in sexually-explicit conduct with Jane Doe, who was then a minor child under the age of 16.

A specific video clip from that date is approximately 58 seconds long.  In the clip, Jane Doe is wearing a blue shirt and lying face down on the bed with her buttocks and genital area raised up.  The defendant is naked and directly behind Jane Doe and can be seen to be penetrating the minor child.

The defendant then manipulates a cell phone with his hands and appears to take several pictures of the sexually-explicit conduct he is engaged in.  At least three different flashes can be seen from his cell phone on the video clip.  Approximately 30 seconds into this video clip, the defendant places the cell phone on the bed next to him and continues to penetrate Jane Doe.

Specific to Count 3, which charges the defendant with the

1    production of child pornography, on or about November 1st, 2018,

2    the Government would prove that on or about that date, the

3    defendant, once again, intentionally recorded a video on the

4    Maginon camera that captured him engaged in sexually-explicit

5    conduct with Jane Doe.  Once again, Jane Doe was then a minor

6    child under the age of 16.

7        A specific video clip from that date is approximately four

8    minutes and fifty-seven seconds long.  This video depicts the

9    defendant on his back naked while Jane Doe is masturbating his

10   penis with her hands until he ultimately ejaculates.

11       Moving on to Count 4, which charges the defendant with

12   knowingly possessing child pornography, as that term is defined

13   in 18 USC Section 2256, subsection 8, subsection capital A, that

14   involved a minor and that had been produced using materials that

15   had been mailed, shipped, and transported in interstate and

16   foreign commerce by any means.

17       The Government would prove that on or about July 31st of

18   2019, the defendant possessed the videos that I've just

19   previously described along with many other videos that depicted

20   child pornography.

21       Specifically, on July 31st of 2019, the defendant possessed

22   the Maginon camera and the min SD cards that contained child

23   pornography that he had produced involving Jane Doe during that

24   approximate three-year time period that he was engaged in

25   sexually-explicit conduct with her.

1     Additionally, the government would prove at trial that

2  Maginon WiFi cameras and min SD cards, along with cell phones,

3  are not manufactured inside the Commonwealth of Kentucky unless

4  the interstate nexus for all counts of the indictment would be

5  met.  Thank you, Judge.

6          THE COURT:  Thank you.  Mr. Bradley, did you hear and

7  understand what the prosecutor said just now?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And do you agree with the prosecutor's

10  summary?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Is it true that you did the things that

13  she says you did?

14          THE DEFENDANT:  Yes.

15          THE COURT:  You did, in fact, possess and produce

16  child pornography?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Okay.  And do you agree that you did all

19  the things described by the prosecution today and listed in the

20  indictment?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And is it your intention to guilty --

23  enter a guilty plea to Counts 1 through 4 of the indictment

24  because you are, in fact, guilty of those charges?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Okay.  The Court finds that there is a

2     factual basis for the guilty plea.

3        Mr. Bradley, I'll now ask you to tell the Court how you

4     plead with respect to each of the counts against you.  In the

5     case of the United States against Bradley, Criminal Case Number

6     3:21-18, how do you plead to Count 1 of the indictment?

7          THE DEFENDANT:  Guilty.

8          THE COURT:  And as to Count 2?

9          THE DEFENDANT:  Guilty.

10         THE COURT:  Count 3?

11         THE DEFENDANT:  Guilty.

12         THE COURT:  And Count 4?

13         THE DEFENDANT:  Guilty.

14         THE COURT:  The Court has observed the demeanor of the

15    defendant.  I'm satisfied with the representations and

16    statements that Mr. Bradley has given me, and I will make the

17    following findings:

18        That in the case of the United States against Bradley, the

19    defendant is fully competent and capable of entering an informed

20    plea.  That his plea of guilty is knowing and voluntary and

21    supported by an independent basis in fact containing the

22    essential elements of the offenses charged.

23        The Court, therefore, accepts the plea and determines the

24    guilty -- the defendant guilty of the offenses charged in Counts

25    1 through 4 of the indictment.  The plea will be entered into

1  the record.

2      Okay.  Before we talk about sentencing or the defendant's

3  motion, is there anything else that we should discuss with

4  respect to the plea today?

5          MS. ZIMDAHL:  Nothing from the Government.

6          MR. JUDAH:  No, Your Honor.

7          THE COURT:  Okay.  Now, earlier, I told both sides

8  during a telephonic conference that we'd take whatever time was

9  necessary before sentencing to make sure the PSR was adequate

10  and fully considered.  I believe that that would mean a

11  longer-than-normal 35-day period under Rule 32, Mr. Judah, and

12  that no other -- we would need to waive any -- any deadlines

13  that might move things faster as opposed to slower, I take it?

14          MR. JUDAH:  Yes, Your Honor.

15          THE COURT:  Okay.  Does it make sense to schedule a

16  sentencing now or is it more sensible to take that up after

17  deciding the ex parte motion that we'll discuss once the

18  Government leaves?

19          MR. JUDAH:  Judge, probably best to take that up after

20  the ex parte motion, and whatever we do, Your Honor, in terms of

21  a date, I think it's -- I mean, I don't think we -- we're

22  looking at anything very quickly anyway in terms of preparation,

23  and, obviously, based on the amount of time my -- you know, just

24  so the record's clear, amount of time my client would be looking

25  at for any circumstances, I don't -- I don't believe there's any

1  prejudice to him at this point anyway, Your Honor.  So I think

2  we're fine if we need to go out further down the road, for

3  whatever reason.

4         THE COURT:  Okay.  He's in custody today and will

5  remain so, correct?  He's in custody today?

6         MR. JUDAH:  Oh, yes, sir.  Oh, yes, sir.  Yeah,

7  he's -- he's -- yes.

8         THE COURT:  Okay.

9         MR. JUDAH:  He's not going anywhere.

10        THE COURT:  I'm just making a record here, and -- and

11  so you are waiving any objection you might have to a speedier

12  sentencing, correct?

13        MR. JUDAH:  Yes, Your Honor.

14        THE COURT:  Okay.  Any objection or comment from the

15  Government's perspective?

16        MS. ZIMDAHL:  No, Your Honor, and if you would like us

17  to wait or call back in, whatever you would like in terms of

18  setting a sentencing, we're happy to accommodate that, and I

19  think the most important thing is ensuring we get it right, so

20  we'll -- we'll be happy to accommodate whatever time is

21  necessary.

22        THE COURT:  Okay.  So we won't set the sentencing

23  hearing date or time today.  We'll take up this motion, and I

24  will ask counsel to confer, once next steps are clear, and then

25  to reach out to chambers.  You can just use the chambers' e-mail

1  address.  Either of you can reach out, copy the other side with

2  your proposal for a sentencing date so that we get something on

3  the calendar at the right time.  Okay?

4          MR. JUDAH:  Sounds good, Your Honor.

5          THE COURT:  Okay.  Anything else with respect to the

6  Government?

7          MR. JUDAH:  I was just going to say I was in the --

8  the PSR, once it gets rolling, and, you know, it can take them a

9  little while to get that together anyway, so that will be sort

10  of the trigger once we get feedback on it as to being able to

11  set some time -- dates for a sentencing, Your Honor.

12          THE COURT:  Okay.  Well, unless either side objects,

13  I'm comfortable not sending you home with a deadline of any sort

14  today, and I'm going to rely on you-all to confer at or before

15  the time you just mentioned just to make sure this doesn't slip

16  through the cracks.  I'm sure it wouldn't.

17          MR. JUDAH:  Thank you, Your Honor.

18          THE COURT:  Okay.  Mr. Bradley, a written presentence

19  report will be prepared by the probation office to assist the

20  Court in sentencing in this case.  You'll be asked to give

21  information for this report.  You can choose whether or not to

22  have counsel present, and you and Mr. Judah will have an

23  opportunity to read and make any objections prior to the

24  sentencing hearing.  And you will have the opportunity, though

25  not the obligation, to speak on your own behalf at sentencing,

1  if you choose.  Does that make sense?

2          THE DEFENDANT:  Yes, sir; it does.

3          THE COURT:  Okay.  Anything else before we let the

4  Government go today?

5          MS. ZIMDAHL:  No, Judge.

6          MR. JUDAH:  No, Your Honor, other than -- no.  Not

7  with the United States, anyway.

8          THE COURT:  Okay.  Well, let's then move -- would it

9  be appropriate to put the next portion of the transcript on a

10  sealed record?

11          MR. JUDAH:  Yes, Your Honor.

12          THE COURT:  Okay.  Any objection?

13          MS. ZIMDAHL:  No.  We'll be happy to pack up and

14  leave.

15          THE COURT:  All right.  We'll pause, let you-all

16  leave.  You thank you very much.

17          MS. ZIMDAHL:  Thank you.

18      (Proceedings concluded at 2:50 p.m.)

19                   C E R T I F I C A T E

20      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

21  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

22

23  _____          December 8, 2021
           s/Rebecca S. Boyd
24  Official Court Reporter                    Date

25