UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                          CRIMINAL ACTION NO.: 3:21-CR-00018-BJB
                                                              *Filed Electronically*

CURTIS BRADLEY                                                              DEFENDANT

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by counsel, files its memorandum in support of sentencing in this action currently scheduled for January 28, 2022. The United States intends to call one witness at the hearing. The United States anticipates that the victim in this case will request to address the Court through a written statement read into the record by counsel for the United States. The United States recommends that defendant Curtis Bradley ("Bradley" or "Defendant") be sentenced to 1,200 months imprisonment—the applicable guideline sentence and a sentence that is sufficient, but no greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

**I.      BACKGROUND**

Over the course of several years, Bradley sexually assaulted the minor victim in this case on more than 100 occasions. This began when the little girl–referred to as Jane Doe–was just 11 years old. (Presentence Investigation Report ("PSR"), DN 49 at ¶9). This continued until Jane Doe reported the sexual assaults approximately three years after they began in 2019. (*Id*.) Bradley had access to Jane Doe due to a familial relationship, as he was then married to Jane Doe's aunt, Monica Bradley.[1] Monica Bradley would transport Jane Doe to Bradley's residence for the purpose of his engaging in sexual contact with Jane Doe in return for Bradley providing her with

---

[1] Monica Bradley is a defendant in a related, but separate, federal case in this District.

cash and/or drugs. (*Id*; *See also* DN. 43, Change of Plea Transcript, at p. 28). In addition, on at least one occasion, Bradley directed Monica Bradley to place Xanax in Jane Doe's drink to impair her memory. (*Id.* at ¶ 14).

Bradley frequently recorded his abuse of Jane Doe on a black Maginon IPC-30 FHD video camera positioned in his bedroom as well as on a cell phone capable of taking photographs. (PSR at ¶12). The SD card in the camera contained numerous video clips of Bradley's bedroom, including many video clips that contained sexually explicit conduct involving Bradley and Jane Doe dated from the time period of July through November 2018. (*Id*.). Among those clips there were also video clips of Bradley manipulating and moving the video camera around his bedroom. A few of the many videos captured and saved by Bradley during a short period of his long-running sexual abuse of Jane Doe are described in detail in the PSR. (PSR at ¶¶ 12-13). All of the child pornography videos produced by Bradley in this case document his sexual abuse of Jane Doe, and in some videos, he can be seen taking photographs with his cell phone of the sexual acts, even while video recording it, to further record the abuses he perpetrated upon the victim for his own gratification. (*Id*.)

## II.   GUIDELINES CALCULATION

The United States agrees with the U.S. Probation Office's ("USPO") calculations contained within its Presentence Investigation Report. Defendant's total offense level is 51; however, pursuant to the commentary to Chapter 5, Part A of the United States Sentencing Guidelines, as this is a rare instance in which the offense level is calculated in excess of 43, the offense level is treated as a level 43. (PSR at ¶¶ 19-55). The United States further agrees with the U.S. Probation Office's calculation that, in light of the age of his prior convictions, Defendant's Criminal History Category is I. (PSR at ¶¶ 57-61). This produces a guideline sentencing range of life. (PSR at ¶ 82). However, as USPO notes, the statutorily authorized maximum sentences are less than the

minimum of the applicable guideline range, and therefore the guideline term of imprisonment is 1,200 months. (*Id.*).

### A. The 4-level enhancement under USSG §2G2.1(b)(1)(B) is appropriately applied.

Under USSG §2G2.1(b)(1)(b), a four-level enhancement applies where the offense involved "the commission of a sexual act[2]; and (ii) conduct described in 18 U.S.C. § 2241(a) or (b)." The first condition for application of the enhancement—commission of a sexual act—does not appear to be contested here as the evidence demonstrates that on numerous occasions, many of which he captured on camera, Bradley's sexual abuse of Jane Doe consisted of him penetrating the minor victim's vagina with his penis. (PSR at ¶12). The second condition—conduct described in 18 U.S.C. § 2241(a) or (b)—is also met in this case.

18 U.S.C. § 2241(b) describes two types of conduct:

(1) renders another person unconscious and thereby engages in a sexual act with that other person; or

(2) administers to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby--
    (A) substantially impairs the ability of that other person to appraise or control conduct; and
    (B) engages in a sexual act with that other person.

Conduct described in subsection(b)(2) occurred in this case as, on at least one occasion, Bradley directed Monica Bradley to place half of a Xanax pill in Jane Doe's milkshake to impair Jane Doe's memory. (*Id.* at ¶14). As USPO notes, "[t]his was part of the grooming process which allowed the defendant's behavior to escalate, engaging in sexual acts with the victim." (*Id.*). This was Bradley's administration to another person [Jane Doe], without her knowledge or permission, a drug [Xanax], to impair her ability to appraise or control her conduct in order for Bradley to

---

[2] The definition of "sexual act" under 18 U.S.C. § 2246 includes "contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; …"

3

ultimately engage in a sexual act with her. The enhancement is thus properly applied. *See United States v. Arsenault,* 833 F.3d 24, 27 (1st Cir. 2016)(affirming application of enhancement under §2G2.1(b)(1)(b) where defendant drugged victims and sexually abused them.); *United States v. Lopez,* 689 F. App'x 732 (4th Cir. 2017) (affirming conviction under § 2241(b)(2) of a nurse at Department of Veterans Affairs hospital who was on duty when victim arrived complaining of severe pain and nausea, administered morphine to victim without her permission before digitally penetrating her).

### B. There is No Impermissible "Double Counting" in the Application of the Guidelines in This Case.

In the Sixth Circuit, the well-established rule is that "impermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *See United States v. Sabino*, 307 F.3d 446, 450 (6th Cir. 2002); *United States v. Farrow*, 198 F.3d 179, 191 (6th Cir. 1999). In this case, Bradley argues that the application of the three-point enhancement resulting from the operation of § 3D1.4's grouping rules and the enhancement for a pattern of prohibited sexual conduct under § 4B1.5(b)(1) amounts to "double-counting." This argument misses the mark for two reasons. First, the language of § 4B1.5(b)(1) specifically recognizes that the Sentencing Commission intended that the repeat sex offender enhancement be imposed in addition to calculations made pursuant to §§ 2A3.2 and 3D1.4. Second, the grouping rules of § 3D1.4 and the enhancement in § 4B1.5(b) address distinct harms and thus the process for determining base offense level under Chapters Two and Three is unrelated to process for calculating enhancements under Chapter Four.

To begin with, Section 4B1.5(b) states:

> In any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:

> (1) The offense level shall be 5 **plus the offense level determined under Chapters Two and Three.**

*See* USSG § 4B1.5(b)(1) (emphasis supplied). Clearly the express language of § 4B1.5(b)(1) recognizes the intent of Congress and the Sentencing Commission to apply the enhancement in § 4B1.5 in addition to the offense level as determined under Chapters 2 and 3. Indeed, this is exactly what the Sixth and other Circuits around the country have recognized. *See e.g. United States v. Calmes*, 728 F. App'x 539, 542 (6th Cir. 2018) (recognizing that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct permitting "double-counting" with respect to the application of § 3D1.4 and §4B1.5(b)(1)); *United States v. Norris*, 526 F. App'x 726, 727 (9th Cir. 2013) ("[s]ection 4B1.5(b)(1) expressly provides for a five-level enhancement 'plus the offense level determined under Chapters Two and Three' e.g., plus adjustments under grouping rules in U.S.S.G. §§ 3D1.2 to 3D1.4"); *United States v. Craig*, 420 F. App'x 605, 607 (7th Cir. 2011) ("§ 4B1.5(b)(1) requires the adjusted offense level for repeat sex offenders to be '5 plus the offense level determined in Chapters Two and Three'; the word 'plus' reflects the Commission's intent that repeat offenders receive a 5–level enhancement 'in addition to' any calculations in Chapters Two and Three'"); *United States v. Bise*, 610 F. App'x 587 (8th Cir. 2015) (affirming district court's application of a 2–level sentencing enhancement under U.S.S.G. §§ 3D1.2, 3D1.4 and a 5–level enhancement under U.S.S.G. § 4B1.5(b) where defendant was charged with two separate counts of production of child pornography relating to two separate occasions with the same victim).

Next, the grouping rules of Chapter Three and the enhancement in § 4B1.5(b) focus on distinct harms and serve separate penological goals under the Guidelines. The grouping rules of Chapter Three focus on grouping criminal acts that represent one composite harm. Production of child pornography involving the same victim on different dates does not constitute one composite harm and thus convictions on multiple counts of such conduct are not grouped under the Chapter

Three rules.[3] *See United States v. Bise,* 610 F. App'x 587 (8th Cir. 2015) (affirming district court's decision not to group two production counts under §3D1.2 where unlawful acts occurred on two separate occasions with the same victim); *United States v. Kiel*, 454 F.3d 819, 822 (8th Cir. 2006) (recognizing that each time defendant "molested a child, he inflicted a separate and distinct harm upon that child; therefore, his actions cannot be considered substantially the same harm for grouping purposes under § 3D1.2.").

The purpose of the Repeat and Dangerous Sex Offender Against Minors enhancement in Chapter 4 is not the same, instead focused on a defendant's engagement in a pattern of prohibited sexual conduct with a minor. This enhancement takes into account the severity of the harm to victims from the repeated abuse as well as the danger that offenders who engage in such a pattern of activity present to society. As a result of their different focus and goals, the process for determining a base offense level under Chapter Three of the Guidelines is undertaken separately from the process for calculating an enhancement under § 4B1.5(b)(1). *See United States v. Von Loh*, 417 F.3d 710, 714–15 (7th Cir. 2005) (the enhancement that the district court imposed pursuant to § 4B1.5(b)(1) for defendant's pattern of prohibited sexual conduct with minors was irrelevant to the decision to treat his offenses as separate harms for purposes of determining the base offense level under Chapters Two and Three.); *United States v. Streetman*, 725 F. App'x 594, 595 (9th Cir. 2018) (§ 3D1.4 and § 4B1.5(b) serve distinct penological goals). For these reasons, the USPO appropriately considered Bradley's repeated sexual abuse of Jane Doe on more than 100 occasions separately from Chapter Three grouping rules and appropriately applied the pattern of activity enhancement under § 4B1.5(b)(1). *See e.g. United States v. Brattain*, 539 F.3d 445, 448 (6th Cir. 2008) ("we believe the plain language of § 4B1.5(b)(1) and its application note apply to

---

[3] In this case, Bradley has been convicted of the production of child pornography related to three separate dates on which he video recorded his sexual assault of the same minor victim. To the extent Bradley is arguing that his convictions on Counts 1-3 of the Indictment should have been grouped, he is wrong. The PSR appropriately treated each conviction as a separate and distinct harm not subject to grouping under § 3D1.2.

6

defendants who abuse only a single victim."); *United States v. Brown*, 634 F. App'x 477, 482 (6th Cir. 2015) (§ 4B1.5 applies when the "defendant has engaged in at least two separate occasions of prohibited conduct with a minor, even if those separate occasions are with the same victim.").

### III. SENTENCING FACTORS

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). Title 18, United States Code, Section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed:

   (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)   to afford adequate deterrence to criminal conduct;

   (C)   to protect the public from further crimes of the defendant; and

   (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for--

   (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
   . . .

(5)   any pertinent policy statement--
   . . .

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

It is the position of the United States that the requested sentence of 1,200 months imprisonment—the applicable guideline range in this case—is necessary to accomplish the sentencing purposes of 3553(a).

1. **Nature and Circumstances of the Offense**

There can be no question that Bradley engaged in extremely egregious and vile crimes that have forever traumatized an innocent young victim. Bradley orchestrated a diabolical scheme—exploiting his wife's drug addiction and a familial relationship with the victim—to sexually abuse Jane Doe over the course of three years beginning when she was just 11. (PSR at ¶ 9). To perpetuate this sexual abuse of Jane Doe, Bradley would pay his wife in cash or drugs to transport Jane Doe to his house during times when Jane Doe's elderly grandmother and caretaker was at dialysis treatment. (*Id*.; DN. 43, Change of Plea Transcript, at p. 28). He also, on at least one occasion, drugged Jane Doe by directing his wife to place half of a Xanax pill in Jane Doe's milkshake to impair her memory. (PSR at ¶14). In addition to the sexual abuse itself, Bradley recorded, via both video and still photography, his abuse of Jane Doe on numerous occasions throughout the course of the abuse. (*Id*. at ¶¶ 12, 13).

The deplorable facts of this case speak for themselves. Bradley targeted a population that is the most vulnerable in our society: children. Even worse, he selected a child victim over whom he had a measure of control and access due to a familial relationship. In other words, of the most vulnerable citizens among us, he chose the most vulnerable of the most vulnerable. Such serious criminal conduct demands an appropriately stringent sentence.

2. **History and Characteristics of the Defendant**

Though Bradley is a Criminal History Category I for purposes of determining his sentencing guideline range, he does have a rather significant criminal history that sheds some light on his access to and use of drugs as a lure and tool as part of his conduct in this case. In 1992, Bradley was convicted of Possession with Intent to Distribute Cocaine in federal court in this District and sentenced to 33 months' imprisonment. (PSR at ¶ 59.) Just a few years later, in 1994, Bradley was again arrested for the illegal possession of a controlled substance and sentenced in Jefferson County Circuit Court to five years' imprisonment. (*Id*. at ¶ 60.) Though there is a break

in his criminal history after a 2000 arrest, again for narcotics-related offenses, until the arrest that led to this case in 2019, it is clear that previous encounters with law enforcement and significant terms of incarceration have failed to deter Bradley from criminal conduct. Bradley was similarly undeterred and continued his involvement with illegal narcotics despite his previous sentences as, by his own admission, he used drugs as a form of payment to Monica Bradley for bringing Jane Doe to his home.

There is simply nothing in Bradley's history and characteristics to suggest that a sentence any less than 1,200 months is warranted in this case. He was not corralled into this crime by a series of unfortunate life circumstances. Rather, he chose his path, time and again over the course of three years, even knowing full well the repercussions for criminal activity. Bradley has demonstrated through his behavior that he is both a sexual predator of children and someone who cannot conform his behavior to the law. His sentence must reflect that history of criminality and his predatory characteristics.

### 3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

Each of the factors under § 3553(a)(2)(A) weigh in favor of a lengthy, 1,200-month sentence. The offense in this case was extensive and pervasive, carrying on over the course of years, and stopped only because of the bravery of the victim and the intervention of law enforcement. Bradley's decision to repeatedly engage in the most egregious forms of child exploitation requires this Court to respond with a sentence that reflects the seriousness of this offense and promote respect for the law. As for providing just punishment for this offense, the sentence must reflect the gravity of Bradley's conduct and be "of the type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense." *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59). Though no

sentence can possibly give Jane Doe back all that Bradley has taken from her, a sentence of 1,200 months' imprisonment would best reflect these three sentencing goals.

4. **The Need for the Sentence Imposed to Afford Adequate Deterrence**

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See, e.g., United States v. Goff*, 501 F.3d 250, 261 (3rd Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."). 18 U.S.C. § 3553(a)(2)(B) dictates that a sentence of at least 1,200 months' imprisonment is appropriate in this case because Bradley's sentence should be lengthy in order to deter the criminal conduct of others. As such, this Court is in the position to send a loud and clear message to those individuals who, like Bradley, are willing to exploit children for their own sexual gratification.

5. **The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

A lengthy sentence is necessary to protect the public from Bradley, a man who places the public–especially children—at great risk and, under § 3553(a)(2)(C), his sentence must be designed to mitigate that risk. When fashioning a sentence, this Court should consider that sex offenders have a high rate of recidivism. *See Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (noting that the lower court's concerns about recidivism was supported by substantial authority (citing *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("The risk of recidivism posed by sex offenders is frightening and high.") (citations omitted); *McKune v. Lile,* 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault"); *United States v. Allison,* 447 F.3d 402,

405–06 (5th Cir.2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

The Court should also consider that Bradley has shown himself to be undeterrable from criminal conduct based on his commission of numerous crimes in this case over the course of three years *despite* previous encounters with the criminal justice system–including in federal district court—and significant prior prison sentences. For an undeterrable sex offender such as Bradley, whose conduct has already caused substantial, life-long harm to Jane Doe, the threat he continues to pose to the most vulnerable members of society if released is hardly measurable. Simply put, an effective life sentence is necessary to protect the public from Bradley.

## IV. **RESTITUTION**

Restitution is mandatory in this case. Pursuant to 18 U.S.C. § 2259(c)(3) this is a child pornography trafficking offense and restitution is mandatory under 18 U.S.C. § 2259(b)(2). (PSR at ¶ 95). Restitution in the amount of $3,000 payable to Jane Doe should be ordered. The United States anticipate that the parties will be able to enter into an Agreed Order of Restitution for this amount to be filed with the Court at sentencing and incorporated into the judgment and conviction.

## V. **FORFEITURE**

Pursuant to 18 U.S.C. § 2253(a)(3) Bradley should be ordered to forfeit all rights, title, and interests in any property, real or personal, used or intended to be used to commit or promote the commission of the offenses of conviction (or any property traceable to such property) including but not limited to a black Wi-Fi video camera Maginon IPC-30 and SIM cards. The United States respectfully requests that the Court grant the Motion for Preliminary Order of Forfeiture (DN. 37), to which Bradley has not objected.

## VI. CONCLUSION AND SENTENCING RECOMMENDATION

For the reasons set forth herein, the United States respectfully requests the Court to apply the Sentencing Guidelines, as outlined above, follow the statutory directives set out in 18 U.S.C. § 3553(a), and impose a sentence of 1,200 months' imprisonment followed by a life term of supervised release, order restitution in the amount of $3,000, and order forfeiture.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

Stephanie M. Zimdahl
Christopher C. Tieke
Assistant U.S. Attorneys
717 West Broadway
Louisville, Kentucky 40202
PH: (502) 582-5911
FAX: (502) 582-5097
Email: Christopher.tieke@usdoj.gov
Stephanie.zimdahl@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

Stephanie M. Zimdahl
Christopher C. Tieke
Assistant United States Attorneys